UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

DELROY GISCOMBE,

                Plaintiff,

  -v-                                                            No. 12 Civ. 464 (LTS)(KNF)

NEW YORK CITY DEPARTMENT OF
EDUCATION,

                Defendant.
-------------------------------------------------------------X

## MEMORANDUM OPINION AND ORDER

        Plaintiff Delroy Giscombe ("Plaintiff") brings this action against the New York City Department of Education ("Defendant" or "DOE") alleging discrimination on the basis of his race and gender, retaliation, and deprivation of due process in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and 42 U.S.C. §§ 1981 and 1983, respectively. Defendant has moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Second Amended Complaint ("SAC") for failure to state a claim. The Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331. For the foregoing reasons, Defendant's motion to dismiss is granted in part and denied in part.

## BACKGROUND

        Plaintiff, an African-American male, has been a physical education teacher and administrator in the New York City public school system since 1993 and has worked at the A. Philip Randolph High School since 2002. (SAC ¶ 11.) In 2006, Plaintiff was accused of sexual misconduct and placed in a reassignment center for a year while the charges were being

investigated. While in the reassignment center, he was stripped of his teaching responsibilities. No charges were filed. (Id. ¶ 15.) From 2007 to 2008, Plaintiff served as dean of the high school, but returned to his teaching position after one year. The Complaint does not offer any further details about the circumstances surrounding his departure as dean, but alleges, on information and belief, that Plaintiff was "not allowed to continue as the school's dean because he was African-American while the other top administrators were Hispanic." (Id. ¶ 16.)

In 2010, Plaintiff was again accused of sexual misconduct. The Complaint alleges that several female students fabricated charges that he made inappropriate sexual comments and touched them during gym class when, in fact, all he had remarked upon was that their clothing violated the dress code. (Id. ¶ 17.) In May 2010, after a "flawed investigation," the allegations were substantiated. (Id. ¶ 18.) The Complaint identifies two "flaws" in the investigation. First, it alleges that several students – none of whom was interviewed by the DOE – approached Plaintiff after the DOE's investigation and informed him that the accusers had asked them to lie. (Id. ¶ 19.) The Complaint does not allege, however, that the DOE knew or should have known that these students had been asked to lie. Second, the DOE report incorrectly stated that Plaintiff declined, through his attorney, to speak to investigators. (Id. ¶ 20). Plaintiff admits that he was not disciplined as a result of the investigation. However, he asserts that the failure to discipline him supports the inference that the DOE knew that the investigation was flawed and would invite litigation if pursued. (Id. ¶ 22.) The Complaint asserts that, by failing to investigate the accusations properly, the DOE discriminated against Plaintiff on the basis of his male gender. (Id. ¶ 21.)

In January 2011, one of the students who had accused Plaintiff of misconduct in 2010 admitted in a letter that she had been "peer-pressured" into falsely accusing him; that letter

was given to the Assistant Principal of the high school.  (Id. ¶ 39.)

The Complaint also alleges that, on several occasions in 2010, Plaintiff was pushed by students in the hall.  Two weeks elapsed between the time Plaintiff reported the incidents and the DOE's commencement of its investigations, by which time the witnesses had forgotten or changed their accounts.  No action was taken against the students.  (Id. ¶ 24.)  The Complaint alleges that the school administration's failure to discipline the students made such events more likely to occur.  (Id.)

In February 2011, Plaintiff was reassigned to the "safe room" for students who were suspended from regular classes.  (Id. ¶ 25.)  Despite Plaintiff's requests for a walkie-talkie radio – used by teachers to call for backup during altercations – the administrators refused to provide one.  The Complaint speculates that this refusal was "an intentional decision to make it more likely for a violent incident to occur."  (Id. ¶ 26.)

In May 2011, Plaintiff was assaulted by a student, whom he pushed in self-defense, as a result of which he was treated in the emergency room for back strain.  (Id. ¶ 27.)  The DOE conducted an investigation of the incident and, in June 2011, concluded that Plaintiff had engaged in corporal punishment.  (Id. ¶ 28.)  At around the same time, school administrators met with Plaintiff to discuss concerns about his absences, even though he "had valid doctors' notes to justify most of his absences."  (Id. ¶ 29.)  As a result of the charges of corporal punishment and excessive absences, Plaintiff received an "Unsatisfactory" rating in his year-end evaluation – the first of his career.  (Id. ¶ 30.)  Plaintiff pursued a grievance against his rating, arguing that the definition of "corporal punishment" made an exception for the use of force in self-defense.  (Id. ¶ 31.)

In September 2011, Plaintiff was disciplined in an unspecified manner for leaving

the gym unattended when he stepped outside for "under a minute" to tell a student to come to class. (Id. ¶ 34.) In October 2011, Plaintiff was disciplined in an unspecified manner for writing too many referrals for misbehaving students. The Complaint alleges that he was only enforcing school policy. (Id. ¶ 35.) The following month, another student pushed Plaintiff. The Complaint alleges that these "attacks occur[ed] because students are aware of the fact that school administration [sic] unfairly accused [Plaintiff] of corporal punishment after the May 2011 incident." (Id. ¶ 36.)

Plaintiff claims in his Complaint that he is aware of another African-American teacher at the high school who was unfairly accused of corporal punishment by school administrators. (Id. ¶ 32.) He also alleges that other African-American teachers are afraid to voice their concerns for fear of retaliation. (Id. ¶ 37.) The Complaint further alleges that "there exists a cultural segregation between the Hispanic staff, which include the principal and most administrators, and the African-American teachers." (Id. ¶ 12.) This divide has manifested itself in the form of a "decline in the number of African-American teachers and administrators," in "discriminatory treatment meted out by Hispanic administrators to the African-American teachers," and the harsh disciplining of African-American students by Hispanic administrators. (Id. ¶¶ 12-13.) The Complaint does not identify any of the referenced African-American individuals, nor does it proffer any facts regarding those individuals' experiences, concerns or qualifications.

Plaintiff filed suit against the DOE on January 19, 2012, alleging racial discrimination. Shortly after the Initial Complaint was served, the School Chancellor announced to the media that he was reopening investigations against eight teachers – including Plaintiff – for "past inappropriate conduct with children." (Id. ¶¶ 41-42.) On March 26, 2012, the Principal

filed disciplinary charges against Plaintiff, pursuant to section 3020-a of the New York Education Law, alleging criminal misconduct.[1]  One of the subjects of that charge was the sexual misconduct that one of the complaining students had admitted was fabricated.  (Id. ¶ 43.) Plaintiff was suspended from teaching and reassigned to an administrative office in another building.  (Id. ¶ 44.)

## Discussion

In deciding a Rule 12(b)(6) motion to dismiss, the Court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor.  Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of elements of a cause of action will not do."  Iqbal, 556 U.S. at 677 (internal quotation marks and citation omitted).  Rather, to survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  Iqbal, 556 U.S. at 677 (internal quotation marks and citations omitted). For this reason, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."  Id. at 663.

---

[1] N.Y. Educ. Law §3020-a sets out procedures for the filing and determination of misconduct charges against tenured teachers.  It permits the suspension of charged teachers with pay, pending a hearing and the determination of the charges.  It also affords the employee the right to request a hearing on the charges.

I. <u>Timeliness of Plaintiff's Claims</u>

  Defendant argues that many of Plaintiff's Title VII allegations are time-barred by the applicable statute of limitations, which requires that claims of discrimination be filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged discriminatory act. <u>McGullam v. Cedar Graphics, Inc.</u>, 609 F.3d 70, 75 (2d Cir. 2010); 42 U.S.C. § 2000e–5(e)(1). Plaintiff filed his EEOC charge on February 6, 2012. Accordingly, Defendants argue that any of his Title VII claims that accrued prior to April 12, 2011, are time-barred. Plaintiff responds that, because he asserts a hostile work environment claim, his pre-April 12, 2011, claims are not barred by the statute of limitations so long as one offending act falls within the statutory period. <u>See</u> <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 117 (2002); <u>Cornwell v. Robinson</u>, 23 F.3d 694, 703 (2d Cir. 1994) ("When a plaintiff experiences a continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.") (internal quotations and citation omitted).

  Plaintiff's argument is unavailing because, as explained below, he has failed to allege a viable hostile work environment claim. Accordingly, all of his Title VII claims that accrued prior to April 12, 2011, will be dismissed as untimely.[2]

  In addition, Plaintiff's section 1983 claims that accrued more than three years prior to the filing of the Complaint – including those relating to the allegations of sexual

---

[2] These include: the unsubstantiated allegation of sexual misconduct in 2006, Plaintiff's removal as dean, the substantiated allegations of sexual misconduct in 2010 and the DOE's allegedly flawed investigation thereof, and the DOE's alleged failure to investigate properly the 2010 incidents in which students pushed Plaintiff.

misconduct and his removal as dean – are time-barred. Owens v. Okure, 488 U.S. 235, 244 (1989) (three-year statute of limitations for section 1983 claims). Likewise, Plaintiff's section 1981 claims that accrued more than four years prior to the filing of the Complaint – including those relating to the allegation of sexual misconduct in 2006 – are time-barred. Jimenez v. City of New York, 605 F. Supp. 2d 485, 500 (S.D.N.Y. 2009).

II.     Title VII Retaliation Claim

Defendants move to dismiss Plaintiff's Title VII retaliation claim on the grounds that he failed to assert it in his EEOC charge. This argument is meritless. A plaintiff may bypass the agency exhaustion requirement and proceed to file a suit in court "by demonstrating that new discrimination claims are 'reasonably related' to charges that were previously filed with the EEOC." Malarkey v. Texaco, Inc., 983 F.2d 1204, 1208 (2d Cir. 1993). The Second Circuit has repeatedly held that " a complaint alleging employer retaliation against an employee who has opposed discrimination may be considered 'reasonably related' to allegations already raised with the EEOC." Id. Plaintiff's retaliation claim here is premised on events that post-date the filing of his EEOC complaint. Accordingly, Defendant's motion to dismiss the retaliation claim for failure to exhaust is denied.

III.    Title VII Claims

  A.    Disparate Treatment

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e–2(a) (West 2010). To establish a prima facie case of discrimination under

Title VII, Plaintiff must show that (1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment action; and (4) the circumstances surrounding the action gave rise to an inference of discrimination.  See Mario v. P.C. Food Markets, Inc., 313 F.3d 758, 767 (2d Cir. 2002).

At the pleading stage, a plaintiff need not allege all of the facts required to establish a prima facie case.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511-12 (2002). Rather, "the ordinary rules for assessing the sufficiency of a complaint apply," id. at 511, and thus, to state a claim, a complaint need only contain a "short and plain statement [of] the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a).  Nonetheless, a complaint must offer more than conclusory assertions that the acts complained of took place because of the Plaintiff's membership in a protected class.  Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1088 (2d Cir. 1993).  "To survive a motion to dismiss, Plaintiff must set forth factual circumstances from which discriminatory motivation can be inferred, which may include facts suggesting preferential treatment given to similarly situated individuals, or remarks that convey discriminatory animus."  Algarin v. City of New York, No. 12 Civ. 1264(LTS), 2012 WL 4814988, at *2 (S.D.N.Y. Oct. 10, 2012) (internal quotation marks omitted).

Plaintiff's complaint lacks the factual allegations necessary to render plausible his claim that he was discriminated against on the basis of his race or sex.  Plaintiff broadly alleges that there was an atmosphere of racial tension in the school, and that he was aware of one other African-American teacher who was improperly disciplined for corporal punishment.  He also alleges in a conclusory manner that administrators did not usually discipline other teachers (African-American or otherwise) for the types of conduct for which Plaintiff was disciplined. These allegations are insufficient to provide the missing nexus between the alleged mistreatment

and his membership in a protected group. He does not allege any facts to substantiate his conclusory allegation as to the existence of racial tension, nor does he proffer any facts that would link the alleged racial tension in the school to any of the disciplinary actions that were taken against him. Furthermore, he identifies no similarly situated non-African American or female individuals who were treated differently under similar circumstances, and he identifies no remarks or other facts that would indicate that the discipline of which he complains was motivated by race- or gender-based animus.

Plaintiff's discrimination claim suffers an additional defect: few of the incidents of which he complains rise to the level of adverse employment actions. To constitute an adverse employment action in violation of Title VII, a change in working conditions must be "materially adverse." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000). A materially adverse change "must be more disruptive than a mere inconvenience or an alteration of job responsibilities" and "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Id. (internal quotation and citation omitted). The Complaint does not identify any materially adverse changes in Plaintiff's employment resulting from the 2010 investigation into the charges of sexual harassment, from his unspecified "disciplining" for excessive absences, leaving the gymnasium, and writing too many discipline reports, or from his Unsatisfactory rating.

The Second Amended Complaint thus fails plausibly to state claims for Title VII race and gender discrimination.

B.  Hostile Work Environment

Under Title VII, an employee seeking to bring a hostile work environment claim must demonstrate:

> 1) that plaintiff is a member of a protected class; 2) that plaintiff suffered unwelcome harassment; 3) that plaintiff was harassed because of [his] membership in a protected class; and 4) that the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment.

Scott v. Mem'l Sloan–Kettering Cancer Ctr., 190 F. Supp. 2d 590, 598-99 (S.D.N.Y. 2002). Title VII "does not set forth 'a general civility code for the American workplace.'" Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)). Rather, "[t]he plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." Alfano v. Costello, 294 F.3d 365, 373-74 (2d Cir. 2002). As with the disparate treatment claim, although a plaintiff need not plead a prima facie case to survive a motion to dismiss, dismissal is nevertheless appropriate where the plaintiff "failed to allege even the basic elements of a discriminatory action claim." Patane v. Clark, 508 F.3d 106, 112 & n.3 (2d Cir. 2007).

As explained above, Plaintiff has not pled any facts that would establish a nexus between the incidents underlying his hostile workplace claim and his race or gender. Accordingly, Plaintiff's Second Amended Complaint fails plausibly to state a hostile work environment claim.

C.  Retaliation

Plaintiff alleges that Defendant's public announcement that it was investigating Plaintiff for sexual misconduct and Defendant's decision to bring charges against Plaintiff under

N.Y. Educ. Law § 3020-a were acts of retaliation for commencing this lawsuit.

To establish a prima facie case of retaliation, "an employee must show that (1) [he] was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012). Plaintiff has adequately pled each of the four elements: he pleads that he engaged in protected activity (filing the complaint), that the employer was made aware of that activity by being served, and that he suffered adverse actions, including being stripped of his teaching responsibilities during the pendency of the investigation. Cf. Hicks v. Baines, 593 F.3d 159, 165 (2d Cir. 2010) (actions qualify as adverse under Title VII's anti-retaliation provision if they are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination") (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)). Furthermore, the fact that Defendant's allegedly retaliatory actions came within two months of Plaintiff's commencement of this action is sufficient at the pleading stage to support an inference of causality. See Gordon v. N.Y. City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000) ("proof of causation can be shown . . . indirectly, by showing that the protected activity was followed closely by discriminatory treatment").

Accordingly, Defendant's motion is denied insofar as it seeks the dismissal of Plaintiff's Title VII retaliation claim.

IV.     Section 1983 and Section 1981 Discrimination and Retaliation Claims

Workplace discrimination claims asserting violations of the Equal Protection Clause of the Fourteenth Amendment pursuant to 28 U.S.C. § 1983, and claims asserting discriminatory treatment in violation of 28 U.S.C. § 1981 are analyzed under the same standard

as Title VII claims.  See Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998).  For the reasons state above in connection with Plaintiff's Title VII disparate treatment and hostile work environment claims, Plaintiff's section 1983 and 1981 discrimination claims fail as well.[3]

Defendant also moves to dismiss Plaintiff's section 1983 retaliation claim on the grounds that Plaintiff fails to plead facts sufficient to demonstrate that the DOE can properly be held liable for the alleged retaliation.  To hold a municipal entity such as the DOE liable under section 1983, a plaintiff must allege facts establishing that the constitutional violation was caused by a municipal policy or custom; that is, that the policy or custom was the actual "moving force" behind the alleged wrongs.  Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 690-695 (1978) (§ 1983); Jett v. Dallas Independent School District, 491 U.S. 701 (1989) (§ 1981).  A plaintiff may plead a municipal policy or custom by alleging: "(1) a formal policy, promulgated or adopted by the entity; or, (2) that an official with policymaking authority took action or made a specific decision which caused the alleged violation of constitutional rights; or (3) the existence of an unlawful practice by subordinate officials that was so permanent or well settled so as to constitute a 'custom or usage,' and that the practice was so widespread as to imply the constructive acquiescence of policymaking officials."  Bektic–Marrero v. Goldberg, 850 F. Supp. 2d 418, 430 (S.D.N.Y. 2012).  "A governmental policy may also be imposed for a single decision by a local government official who has final policymaking authority."  Rabideau v. Beekmantown Cent. Sch. Dist., 89 F. Supp. 2d 263, 266 (N.D.N.Y. 2000); see also Zambrano-Lamhaouhi v. New York City Bd. of Educ., 866 F. Supp. 2d 147, 175 (E.D.N.Y.

---

[3] To the extent Plaintiff seeks to bring his gender discrimination claims under section 1981, they fail for the additional reason that "Section 1981 does not prohibit discrimination on the basis of gender."  Anderson v. Conboy, 156 F.3d 167, 170 (2d Cir. 1998).

2011) (holding that "a public school principal acts as a final policymaker to the extent that the ultimate harm that befell the plaintiff was under the principal's control" and that such conduct can be attributed to the DOE for purposes of establishing Monell liability).

Plaintiff alleges that the School Chancellor – the head of the DOE – announced that Plaintiff was being investigated and that the principal filed disciplinary charges.  While the Complaint does not explicitly state that either individual had final policy-making authority over the investigation or referral of charges, the Court can appropriately draw that reasonable inference at this stage.  Accordingly, Defendant's motion is denied insofar as it seeks the dismissal of Plaintiff's section 1983 retaliation claim.

V.     Due Process

Plaintiff alleges that Defendant's public announcement that he was being investigated for sexual misconduct with children, the disciplinary charges under section 3020-a of the Education Law that followed shortly thereafter, and his reassignment to the "rubber room" pending the outcome of the hearing, combined, constitute a deprivation of liberty without due process.[4]

As with any due process claim, to prevail, Plaintiff must show (1) that he possessed a cognizable liberty or property interest, and (2) that the Defendant deprived him of said liberty or property interest without providing adequate process.  See DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003).  Plaintiff argues that the publically announced charges were defamatory and deprived him of his liberty interest in his good name.  An individual's interest in

---

[4]     To the extent Defendant seeks to dismiss the due process claim on Monell grounds, that argument is unavailing for the reasons explained above in connection with Plaintiff's section 1983 retaliation claim.

his or her good reputation is not, by itself, a liberty or property interest sufficient to implicate the Due Process Clause or create a cause of action under § 1983.  See Morris v. Lindau, 196 F.3d 102, 114 (2d Cir. 1999); Paul v. Davis, 424 U.S. 693, 701 (1976) (noting that, where injury is limited to reputational harm, the proper recourse is a state law defamation action).  However, a plaintiff may bring a due process "stigma-plus" claim where he can show "(1) the utterance of a statement about him that is injurious to his reputation, that is capable of being proved false, and that he . . . claims is false, and (2) some tangible and material state-imposed burden . . . in addition to the stigmatizing statement."  Velez v. Lew, 401 F.3d 75, 87 (2d Cir. 2005) (internal quotation marks omitted).

Assuming for the purposes of this analysis that the disciplinary charges and Plaintiff's reassignment to the "rubber room" constitute a cognizable "plus," Plaintiff's claim nonetheless fails because he has not alleged any facts suggesting that the Defendant failed to afford him adequate process.  Segal v. City of New York, 459 F.3d 207, 213 (2d Cir. 2006) ("Because stigma plus is a species within the phylum of procedural due process claims . . . the plaintiff also must demonstrate that her liberty was deprived without due process of law. Stated differently, the availability of adequate process defeats a stigma-plus claim.").  In the context of a stigma-plus liberty deprivation claim, the key question is whether the governmental actor afforded the plaintiff the opportunity to clear his name through a hearing.  Id.  Section 3020-a provides employees with an opportunity to request a hearing.  N.Y. Educ. Law § 3020-a(c) (McKinney 2012).  In addition, an employee may seek to clear his name through an Article 78 proceeding.  Guerra v. Jones, 421 Fed. Appx. 15 (2d Cir. 2011).  Plaintiff does not allege that he sought and was denied hearings pursuant to either law.  Accordingly, Plaintiff fails to state a cause of action for deprivation of liberty without due process of law.

CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the complaint is denied with respect to Plaintiff's Title VII and section 1983 retaliation claims.  It is granted in all other respects.  This Memorandum Order and Opinion resolves docket entry no. 15.  An Initial Pre-Trial Conference will be held in this matter on **March 28, 2013, at 3:00 p.m.**  The parties must confer and make a joint submission in advance of the conference in accordance with the Initial Conference Order (docket entry no. 2).

    SO ORDERED.

Dated:  New York, New York
        February 28, 2013

                              /S
                          LAURA TAYLOR SWAIN
                          United States District Judge